UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


BALOG, INC.                                                                                           PLAINTIFF

V.                                                              CIVIL ACTION NO. 1:06cv586-LTS-RHW

UNITED STATES FIDELITY AND GUARANTY COMPANY                       DEFENDANT


**ORDER**

  Presently before the Court is Defendant United States Fidelity and Guaranty Company's (USF&G) [37] Motion for Partial Summary Judgment.  As background, a complaint was filed on behalf of Plaintiff in the Circuit Court of Harrison County, Mississippi, arising from Hurricane Katrina damage to a business it owns, namely a Subway sandwich restaurant, located in a strip mall complex on Beach Boulevard in Biloxi.  Defendant [1] removed the cause of action to this Court basing federal jurisdiction on 28 U.S.C. § 1332.

  Shortly after this case was [22] referred to mediation, an [26] Agreed Order of Dismissal was jointly submitted by the parties terminating Plaintiff's claim against USF&G for loss of business income.  The extent of what Plaintiff contends are its extant covered losses is unclear, but there appears to be no dispute that they are limited to non-structural damage because the building was not insured under the USF&G policy.

  Although the Court has been favored with the usual material contemplated by Fed. R. Civ. P. 56 (expert opinions and affidavits, denial letter, and deposition excerpts), to some degree USF&G's motion for partial summary judgment sounds more like a request for declaratory relief. The Court is requested to "enter an order that USF&G is not liable for . . . any claims seeking to invalidate the water damage exclusion or seeking coverage for flood damage under the homeowners [sic] policy."  Also attached as an exhibit to the motion is the insurance policy issued by USF&G to Plaintiff "which was in force and effect from July 1, 2005 through July 1, 2006 . . . ."  [37] at p. 1.  Of course, the storm occurred on August 29, 2005.

  The provision referenced by USF&G reads:

C. Exclusions
  1. We will not pay for loss to Covered Property caused directly or indirectly by any of the following: Such loss is excluded by any other cause or event that contributes concurrently or in any sequence to the loss.  *Unless otherwise stated*, the following exclusions apply to all SECTION 1–Coverages.

  a. Water.

>   (1) Flood, surface water, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(Emphasis added).

However, that exclusion forms a small part of an extensive policy to which a broadly worded Windstorm or Hail endorsement is also appended.  The latter contains the following language:

>   THIS ENDORSEMENT CHANGES THE POLICY . . .
>   This endorsement modifies insurance provided under the following:
>
>   PROPERTY COVERAGE PART.
>
>   The Windstorm or Hail Deductible, as shown in the Schedule above, applies to loss to Covered Property *caused directly or indirectly by Windstorm or Hail , regardless of any other cause or event that contributes concurrently or in any sequence to the loss*.  If loss from a covered weather condition other than Windstorm or Hail occurs, and that loss would not have occurred but for Windstorm or Hail, such loss shall be considered to be caused by Windstorm or Hail and therefore part of a Windstorm or Hail occurrence .
>
>   With respect to Covered Property at a location identified in the Schedule above, SECTION III–DEDUCTIBLE of the Property Coverage Part does not apply to Windstorm or Hail.
>
>   The Windstorm or Hail deductible applies whenever there is an occurrence of Windstorm or Hail.

(Emphasis added).

The interpretation of the terms of an insurance policy present questions of law, not fact. *Gore v. American Motorists Insurance Co.*, 441 F.2d 10 (5th Cir. 1971); *United States Fidelity and Guaranty Co. v. Omnibank*, 812 So. 2d 196 (Miss. 2002).  The terms of an insurance policy are to be interpreted under the rules of construction generally applicable to written contracts, and where the terms of an insurance policy are clear and unambiguous, they are to be enforced as written.  *Farmland Mutual Insurance Co. v. Scruggs*, 886 So. 2d 714 (Miss. 2004); *Shaw v. Burchfield*, 481 So. 2d 247 (Miss. 1985).  Any ambiguity in the terms of an insurance policy is to be resolved in favor of the insured and against the insurer who drew the contract.  *Williams v. Life Insurance Company of Georgia*, 367 So. 2d 922 (Miss. 1979).  An insurance contract is to be considered as a whole, and each of its provisions should be given a reasonable interpretation that is, to the extent possible, consistent with the other terms of the contract.  *Glantz Contracting Co. v. General Electric Co.*, 379 So. 2d 912 (Miss. 1980).

These basic principles, which are acknowledged by USF&G in its [38] supporting memorandum, were summarized in the early case of *Southern Home Insurance Co. v. Wall*, 127 So.298 (Miss. 1930):

> In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each. Where the policy is subject to two interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail. If one construction, looking to the other provisions of the policy, and to its general object and scope, would lead to an unreasonable result, such construction must be abandoned, and that construction adopted which will be more consistent with reason. In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance.

In the instant case, it is not so much that different interpretations of the subject policy are possible, and the Court understands that a policyholder is only entitled to benefits for those losses afforded coverage within the confines of the entire policy. But when the entire policy is considered here, there is not to be found the limiting deductible language in, for example, *Tuepker v. State Farm Fire & Casualty Co.*, No. 1:05cv559 ("The Hurricane deductible percentage (%) shown in the **Declarations** applies only for direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a **hurricane** as defined above."; "All other policy provisions apply." ); or *Buente v. Allstate Property & Casualty Insurance Co.*, No. 1:05cv712 ("The hurricane deductible applies in the event of covered loss caused by **windstorm**, or by any object(s) driven by **windstorm**, during the following time period . . . ."; "windstorm" is defined as "wind, hail, rain, snow, or sleet caused by or resulting from a **hurricane**, a **tropical storm**, or a tornado originating from a **hurricane** or **tropical storm**"; "All other provisions of the policy apply.").

This Court has ruled that "Hurricane Katrina was a windstorm by any definition. Indeed, the definition of a hurricane is based on the strength of the winds it generates." *Broussard v. State Farm Fire & Casualty Co.*, No. 1:06cv6 (Order docketed at [133]). A significant remaining fact question is whether the Windstorm or Hail Deductible endorsement was a part of the "subject policy" at the time of the loss.

Plaintiff's [39] response focuses on destroyed business personal property being covered under the "collapse" provision of the policy; a theft claim on a stolen safe containing cash and other personal property; and the improper allocation of the burden of proof to establish entitlement to policy proceeds. The record is incomplete as to the precise damage to Plaintiff's insured property, as well as to what has and has not been paid.

This Court will not engage in an exercise resembling the answer to a hypothetical question on a law school exam. It is unknown "what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Fed. R. Civ. P. 56(d). For present purposes, the Court can not say that there is no genuine issue as to any material fact and that USF&G is entitled to even a partial judgment as a matter of law.

Accordingly, **IT IS ORDERED**:

USF&G's [37] Motion for Partial Summary Judgment is **DENIED**;

Plaintiff's [41] Motion for Leave to File Sur-response in Opposition to USF&G's [37] Motion for Partial Summary Judgment is **DENIED**.

**SO ORDERED** this the 4th day of June, 2007.

                                                s/ L. T. Senter, Jr.
                                                L. T. SENTER, JR.
                                                SENIOR JUDGE